IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Michael Gregg-Wilson, | ) | |
| | ) | C/A No. 3:04-23132-MBS-JRM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| John Roveri, Director, Sumter County | ) | |
| Career Center (SCCC); Stuart A. Liddell, | ) | |
| A.D. SCCC; Jo R. White, Chairperson | ) | |
| SCCC Board of Trustees; Zona Jefferson, | ) | **OPINION AND ORDER** |
| board member; Edward Alston, board | ) | |
| member; Frank Baker, board member; | ) | |
| Wesley Blanding, board member; | ) | |
| Charles Burns, board member; Tom | ) | |
| Garrity, board member; James Griffin, | ) | |
| board member; Kay Raffield, board | ) | |
| member; Kurt Welday, board member, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Michael Gregg-Wilson formerly was employed at the Sumter County Career Center

(SCCC) in Sumter, South Carolina. He filed this action on December 1, 2004 pursuant to 42 U.S.C.

§§ 1981, 1983, and 1985. Plaintiff's complaint contains allegations of disparate treatment,

conspiracy, and a claim that he was terminated in retaliation for exercising his free speech rights

under the First Amendment.

By order filed September 30, 2005, the court granted summary judgment with respect to

Plaintiff's disparate treatment and conspiracy claims. The court declined to exercise jurisdiction over

Plaintiff's state law claims for civil assault and battery. The court also dismissed a number of

Defendants named in the original complaint. The sole remaining issue concerns Plaintiff's assertion

that he was terminated in violation of his free speech rights under the First Amendment. The

remaining Defendants are John Roveri, Director of SCCC; Stuart Liddell, Assistant Director of SCCC; and Edward Alston, Frank Baker, Wesley Blanding, Charles Burns, Tom Garrity, James Griffin, Kay Raffield, and Kurt Welday, members of SCCC's Board of Trustees (collectively, "the Board").

This matter came before the court for a pretrial conference on April 3, 2006. At that time, the court requested additional briefing with respect to the pending First Amendment claim. The remaining Defendants timely filed a motion for summary judgment on April 10, 2006.[1] (Entry 72.) Plaintiff filed a memorandum in opposition on April 10, 2006 (Entry 73), to which Defendants filed a reply on April 18, 2006. (Entry 74.) The court has considered the motion, memoranda, record, and applicable law. The court concludes that Defendants' motion for summary judgment should be granted.

## I. FACTS

Plaintiff's First Amendment claim revolves around several confrontations he had with Defendants Roveri and Liddell after they assumed positions as Director and Assistant Director, respectively of SCCC. Initially, Plaintiff, who is black, sent a letter to the Board on July 27, 2004 questioning the hiring of Roveri, who is white, and Roveri's selection of Liddell, who is white, as Assistant Director. Among other things, Plaintiff stated:

> I would question why Mr. Roveri would convene a board of peers to evaluate internal members, while all along knowing that if they weren't selected it could cause callous feelings towards those involved and alienation for working conditions amongst co-workers.

---

[1] The court originally requested briefing by Friday, April 7, 2006. Defendants requested, and were granted, an extension of time until Monday, April 10, 2006 to file their motion.

2

> I would also question the selection of Mr. Roveri's choice of a Caucasian male from Greenville, SC (minority population less than 30%) as Asst. Director when far more knowledgeable and capable employees within the organization (of which I am one) had applied for the position.
>
> By naivety, ignorance or design Mr. Roveri has embarked upon a mission to deny exceptional qualified minority individuals the equal rights, privileges and opportunities that we are entitled by all the laws of the Nation to partake of.
>
> I fear that in his organization minorities will be denied an opportunity to have any remarkable administrative impact on those with which we share a common heritage/history of enslavement, social and economic oppression, racially based hatred and genocide.
>
> His selection of an in-house committee to select an Asst. Director can be seen as a divisive facade to deflect attention away from the fact that his, was the soul decision on the selection.  By forming a committee it would imply that one's peers were so adverse to his/her capabilities and potential that they would acquiesce to the selection of a complete and unproven stranger, causing certain enmity.

Complaint, pp. 4-5 (quoting July 27, 2004 letter).

On Friday, August 12, 2004, Roveri declared at an in-service training meeting that faculty meetings would not be used for "discussing, debating, complaining, arguing or otherwise creating contention among staff over issues of public, private, legal or constitutional concerns."  Complaint, p. 9.  Plaintiff confronted Roveri, stating

> that such a broad edict would violate the constitutional rights and privileges of individuals set by a number of precedent cases.  Plaintiff further questioned defendant as to what federal statute he felt gave him such awesome power to create such an all encompassing regulation.

Id.

On September 1, 2004, "after a myriad of despotic discriminatory rules, regulations, edicts and transgressions primarily against plaintiff and his concerns, plaintiff decided to take actions that would rein in the abuses of defendant Roveri and his subordinates." Id., p. 12.  Defendants contend, and Plaintiff does not dispute, that Plaintiff disrupted a faculty meeting by complaining and

questioning the decisions of the administration in deliberate violation of Roveri's request that faculty meetings not be a forum for such activity.  Roveri suspended Plaintiff from his teaching duties for two working days "due to . . . gross misconduct during our faculty meeting on 9-1-04."  See Defendants' Motion for Summary Judgment (Entry 38), letter dated September 2, 2004 from Roveri. Plaintiff responded by letter dated September 8, 2004, stating that because Roveri and Liddell "were openly displaying an abuse of power and authority" that he "felt it imperative that action be taken to rein [them] in."  Complaint, p. 13 (quoting September 8, 2004 letter).

Plaintiff asserts that after the two-day suspension, he decided to "make a concerted effort to inform the board of trustees of defendant's egregious acts."  Complaint, p. 15.  Plaintiff attended a Board meeting on September 14, 2004, at which time he "attempted to present the numerous violations of policy, constitutional law, and civil rights being perpetrated by defendants Roveri and Liddell."  Complaint, p. 17.  According to the complaint:

> Plaintiff made a hurried but interrupted accounting of the events that had led to his illegal suspension.  The board chairperson then stated that nothing that plaintiff had to say would cause them to take action against defendant Roveri, to which all members nodded in agreement.  Plaintiff stated to them that because defendant was engaged in the illegal use/misappropriation of funds with no-bid contracts, the useless purchase of un-needed equipment and criminal breach of contracts with established vendors they might want to re-think their support of him.  Plaintiff left the meeting with no further contact with any of the board members but felt that it was their intent to try and find some way to dismiss him for his whistle-blowing disclosures which they had no intention of impartially investigating.

Id., p. 18.

Defendants assert that Plaintiff continued to engage in disruptive behavior, including refusing to follow directives; dismantling computers; failing to submit lesson plans; photographing students and instructors at SCCC in violation of policy; shouting through staff meetings; and challenging Roveri's management ability. Defendants' Motion and Memorandum for Summary Judgment (Entry

72), pp. 4-5.  Plaintiff provides no evidence to refute these allegations.  Plaintiff confronted Liddell

about the dress code on October 14, 2004 and got into an off-campus altercation with other SCCC

instructors the same day.  Complaint, pp. 22-27.  Plaintiff was placed on administrative leave.  On

October 18, 2004, Roveri sent Plaintiff correspondence that provided, in relevant part:

> This letter is to notify you of the results of the investigation that was conducted
> during your administrative leave that started on Thursday, October 14, 2004.  After
> reviewing the events that have been documented from your actions in the past several
> months at the Career Center, I feel that I must take immediate action.
>
> Your continuous willful gross misconduct in the workplace has continued despite
> repeated documented warnings one of which resulted in a suspension.  Your efforts
> involving students, parents and faculty members with your personal agenda is
> unprofessional and can no longer continue.  I have included a limited example of the
> actions on your part:
>
> - False information given to students about internal affairs of the Career
>   Center
> - Statements made to parents telling them not to send their child to the
>   Center
> - Misconduct in faculty meetings involving your personal agenda
> - Failure to turn in a single lesson plan or pacing guide to date
> - Photographing students and teachers around campus without permission
> - Removing computer components from brand new office computers
>   without permission
> - Provoking staff members while at lunch in a public restaurant
>
> As a result of these actions, I am notifying you that as of the date of this letter, I am
> suspending you with pay and recommending to the Sumter County Career Center
> board of Trustees that your contract be terminated immediately.

Defendants' Motion for Summary Judgment (Entry 72), Exhibit I.

On October 24, 2004, comments made by Plaintiff to a reporter were published in the local

newspaper article recounting the Board's consideration of Plaintiff's discharge.  Plaintiff told the

reporter that he felt repressed by career center administration and stated there had been some racial

5

discrimination. Plaintiff's Motion for Summary Judgment (Entry 10), Exhibit 10. The Board terminated Plaintiff's employment on November 9, 2004.

## II.  DISCUSSION

The remaining issue in this case concerns Plaintiff's contention that he was terminated for exercising his right to free speech. Retaliatory employment action violates a public employee's right to free speech under the following conditions: First, the speech must relate to a matter of public interest. Connick v. Myers, 461 U.S. 138, 146 (1983). Second, "the employee's interest in First Amendment protection must outweigh the employer's interest in efficient operation of the workplace." Hanton v. Gilbert, 36 F.3d 4, 5 (4th Cir. 1994) (citing Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)). Third, "the employee must establish a causal relationship between the protected expression and the retaliation: that the protected speech was a 'substantial factor' in the decision to take the allegedly retaliatory action." Id. (internal quotation marks and citations omitted). The first two elements are questions of law; the third is a question of fact, "and as such it will serve as a basis for summary judgment only in those instances where there are no causal facts in dispute." Id.

In this case, the court previously has determined, for purposes of summary judgment, that Plaintiff's speech related to a matter of public interest. See Order filed 9/30/05 (Entry 49), p. 5. Plaintiff's speech concerned race relations and discrimination in Sumter County and at SCCC. The Fourth Circuit repeatedly has recognized that "a public employee's speech about racially discriminatory practices, particularly in public schools, involves a matter of public concern." Love-

6

Lane v. Martin, 355 F.3d 766, 776 (4ᵗʰ Cir. 2004).  The court turns to the question of whether

Plaintiff's speech outweighs Defendants' interest in the efficient operation of the workplace.[2]

> The government, as an employer,
>
> "must have wide discretion and control over the management of its personnel and
> internal affairs.  This includes the prerogative to remove employees whose conduct
> hinders efficient operation and to do so with dispatch.  Prolonged retention of a
> disruptive or otherwise unsatisfactory employee can adversely affect discipline and
> morale in the work place, foster disharmony, and ultimately impair the efficiency of
> an office or agency."

Connick v. Myers, 461 U.S. 132, 151 (1983) (quoting Arnette v. Kennedy, 416 U.S. 134, 168 (1974)

(Powell, J., concurring).  The government must retain the ability to control the manner in which its

employees discharge their duties and to direct its employees to undertake the responsibilities of their

positions in a specified way.  Urofsky v. Gilmore, 216 F.3d 401, 409 (4ᵗʰ Cir. 2000).  In balancing

the First Amendment rights of the employee against the employer's interests in efficiency, the court

must take into account whether the employee's speech (1) impairs the ability of supervisors to mete

out discipline, (2) impairs harmony among co-workers, (3) damages close working relationships, (4)

impedes the performance of the public employee's duties, (5) interferes with the operation of the

agency, (6) conflicts with the responsibilities of the employee within the agency, and (7) is

communicated to the public or to co-workers in private."  Love-Lane, 355 F.3d at 778 (citing McVey

---

[2] Defendants Roveri and Liddell did not address this issue in their motion for summary judgment
filed June 13, 2005.  These Defendants argued only that "Gregg-Wilson can neither establish that
his speech is entitled to constitutional protection nor that the speech was a substantial or motivating
factor in the action taken against him by the Center."  Memorandum of Law in Support of
Defendants John Roveri and Stuart A. Liddell's Motion for Summary Judgment (Entry 38), p. 13.
The Magistrate Judge, without analysis, found that "Gregg-Wilson's speech outweighs defendants'
interest in efficient operation of the workplace."  Report and Recommendation (Entry 45), p. 17.
The responsibility for making a final determination remains with this court.  Mathews v. Weber, 423
U.S. 261, 270 (1976).

v. Stacy, 157 F.3d 271, 278 (4th Cir. 1998)). "'When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered.'" Connick, 461 U.S. at 153 (quoting Givhan v. Western Line Consolidated Sch. Dist., 439 U.S. 410, 415, n.4 (1979)).

In the court's view, the balance of interests tips in favor of Defendants. The court is cognizant of the seriousness of Plaintiff's allegations. However, Plaintiff failed to pursue his allegations through proper channels or to express his concerns in the proper manner. Plaintiff's challenge to alleged discriminatory practices resulted in confrontations with Roveri and Liddell in the presence of other faculty during the September 1, 2004 instructional meeting, and interfered with the purposes of that meeting. The complaints Plaintiff made to the Board with respect to his suspension included statements that Roveri and Liddell were engaged in illegal practices and misappropriation of funds at SCCC. Plaintiff's pursuit of evidence to support his claims of disparate treatment led to a physical confrontation with other instructors. Plaintiff's statements impeded the performance of his duties in the classroom and interfered with the regular operation of SCCC. In addition, Plaintiff's protected speech with respect to discriminatory practices in the hiring of Roveri and selection of Liddell included a personal agenda that is reflected in his July 24, 2004 letter to the Board. When employee speech concerning office policy arises from an employment dispute concerning the very application of that policy to the speaker, additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office. Connick, 461 U.S. at 153.

The court does not take allegations of racial discrimination lightly.  However, under these facts and after viewing the record as a whole, the court concludes that Plaintiff's inappropriate manner of expressing his concerns undermined SCCC's ability to promote the efficiency of the public service it performs.  Defendants' motion for summary judgment is **granted** as to this issue.  Because Plaintiff cannot prevail on this prong of the <u>Pickering</u> test, his First Amendment claim is dismissed as to all remaining Defendants.

* * *

Plaintiff filed a motion for summary judgment on April 20, 2006 (Entry 75).  Defendants responded to Plaintiff's motion on May 2, 2006 (Entry 77).  Plaintiff filed a reply on May 2, 2006 (Entry 76).[3]   Plaintiff's motion virtually duplicates the statements contained in his memorandum in opposition to Defendants' motion.  For the reasons stated hereinabove, Plaintiff's motion is **denied**.

## III.  CONCLUSION

For the reasons stated, Defendants' motion for summary judgment is granted and the case dismissed, with prejudice.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Court

Columbia, South Carolina

May 4, 2006

---

[3]Although all Plaintiff's filings contain disparaging and acrimonious language, the vituperative nature of the reply is uncalled for.

9

**NOTICE OF RIGHT TO APPEAL**

**Plaintiff is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**